UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cr-00280-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **STEVE HALE,** | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the court on further consideration of the issue of the amount of restitution, which the court continued at the time of sentencing so that the parties could file supplemental briefs. Those briefs (#100 and #102) have been filed and fully considered.

The Mandatory Victim Restitution Act ("MVRA") was enacted in 1996; prior to that, restitution for federal crimes was governed by the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663. Under the VWPA, a sentencing court had the discretionary power to impose restitution on individuals convicted of certain crimes. Id. at § 3663(a)(1). Courts were then required to consider not only the amount of loss suffered by the victims, but also the "financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents." Id. § 3663(a)(1)(B)(i); United States v. Leftwich, 628 F.3d 665, 668 (4th Cir.2010). Under MVRA, the law applicable now, this court must "order restitution to each victim in the full amount of each victim's losses ... and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); United States v. Alalade, 204 F.3d 536, 538–39 (4th Cir.2000).

The government "bears the burden of proving a victim's loss by a preponderance of the evidence." United States v. Wilkinson, 590 F.3d 259, 268 (4th Cir.2010) (citing 18 U.S.C. § 3664(e)). While only a preponderance standard, the task of determining "each victim's loss" can be a daunting one, especially where a victim's loses may be attributable to others engaged in similar conduct who have targeted the same victim, but who may or may not be associated with this particular defendant. Here, the court's interest is in crafting an Order of restitution that *accurately* reflects each victim's loss that is attributable to this defendant and those involved in his criminal enterprise. Once the government has met its burden, a court must order full restitution. Leftwich, 628 F.3d at 668 ("[T]he district court is precluded from ordering restitution in any amount less than the full amount of the victim's loss." (citation omitted)).

The mechanics of calculating a victim's loss are straight forward as courts use the calculation methodology set forth in 18 U.S.C. §§ 3663 or 3663A. Where a court finds that returning the property to the owner "is impossible, impractical, or inadequate," the restitution amount is "the value of the property on the date of the damage, loss, or destruction, ... less the value ... of any part of the property that is returned." 18 U.S.C. §3663(b)(1)(B) and §3663A(b)(1)(B). An owner of the property stolen may testify to the value of its own property, Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 542 (4th Cir. 2007).

The burden of proving the amount of a victim's loss is considered "in a practical, common-sense way." United States v. Savoie, 985 F.2d 612, 617 (1st Cir.1993). "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." Id. Hearsay testimony may also be considered as long as it bears "sufficient indicia of reliability," United States v. Newman, 144 F.3d 531, 542 (7th Cir.1998) (internal quotation marks omitted), and the defendant "is given an opportunity to refute

the evidence." United States v. Hairston, 888 F.2d 1349, 1353 (11th Cir.1989). The evidence must provide a factual basis for the restitution amount, United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir.1992), and such determination may not rely on "hypothesis, conjecture, or speculation alone." United States v. Ameri, 412 F.3d 893, 900 (8th Cir.2005) (internal quotation marks omitted).

In advance of sentencing, the government filed a Motion for Mandatory Restitution, in which it sought $2,128,059.00 in total restitution, which was comprised of $956,300.00 in restitution for CVS and $1,171,759. 00 in loss for Walgreens.  At the sentencing hearing, Walgreens Northeast Investigations Supervisor Gary Weisbecker and CVS Organized Retail Crime Unit National Manager Tony Sheppard testified and explained the methodologies used to calculate restitution.  They testified that the methodologies they employed in reaching such numbers were conservative and limited.  They each testified that they had used a time frame of one year, a defined product list related to the stolen products identified during execution of search warrants related to the ITSP Conspiracy investigation, and defined their Southeastern locations to calculate losses based on wholesale product cost due to the ITSP Conspiracy. These witnesses were thoroughly cross-examined by defendant's counsel and the court determined that there testimony was highly credible and based on sound methodologies.

At the conclusion of the evidence, defendant argued that the amounts were too high and that the loss amounts attributed to him included loses likeable attributable to others not associated with his enterprise.  While the court indicated its intent to impose restitution, Dolan v. United States, 560 U.S. 605 (2010), the court left open the amount of restitution for a period of 90 days so that the government could submit supplemental materials based on more restrictive limitations and allowed each side to provide the court with written briefs on the resultant conclusions.  The

court instructed the government to limit the loss inquiry to: (1) stolen product identified on price sheets used by defendant during the conspiracy; and (2) only to losses at stores in North and South Carolina. The court determined that such narrowing would provide the court with the best evidence of the losses fairly attributable to this defendant and his criminal organization as such limitations captured the bulk of defendant's illegal operations based on the evidence presented during trial. See e.g. Govt. Trial Exs. 62a, 63a, and 63b and Ex. 57 (attached as Ex A. to the Supplement #100).

Applying such criteria, Mr. Sheppard advised in an email (attached as Exhibit E to the government's Supplement) that, using the parameters proposed by the court to further narrow the loss about which he had testified at sentencing, CVS's loss would be $500,688. Similarly, Mr. Weisbecker provided a revised Victim Impact Statement (attached as Exhibit F to the government's Supplement), advising that, although Walgreens stands by its original calculations, using the court's parameters Walgreens loss (inclusive of investigative costs) was $460,347. (While contesting the actual numbers, defendant does not take issue with the form in which the evidence has been presented.) Thus, the government now seeks a total restitution award of $961,035.00.

Despite a drop of more than 50%, defendant argues that even that amount is too high, arguing that the people in his theft ring "are not the only thieves in North and South Carolina who stole from these two businesses." Opposition (#102) at 2. While that is undoubtedly true, the fact that defendant undertook to engage in a criminal enterprise where the exact amount of loss could not be determined "beyond a reasonable doubt" due to participation of others in similar criminal enterprises does not insulate him from paying restitution to his victims. Here, the court determines that, by a preponderance of the evidence presented, the record before it provides a sufficient factual basis for determining the loss of these victims that does not rely on "hypothesis, conjecture, or

speculation alone." _Ameri_, _supra_. Indeed, the methodology employed by the victims' investigators has, coupled with the even more restrictive criteria specified by the court, provided a more focused picture of the actual loss attributable to this defendant and his theft ring by narrowing the geographical scope and the lists of product to conform to the evidence presented at trial, which indicated the bulk of operations were in those states and focused on those products. By limiting geographical scope and the product lists, the court is confident that it has narrowed theft attributable to others in the Carolinas and has further buffered any misattribution by eliminating product thefts in the broader Southeastern region. As the evidence now before the court provides a substantial basis for reasonable approximation, an inability to achieve an exact measurement of loss does not preclude the court from ordering restitution. _Savoie_, _supra_.

## ORDER

**IT IS, THEREFORE, ORDERED** that having determined the amount of restitution owed, defendant shall make restitution, pursuant to 18 U.S.C. § 3663A, as directed to the Clerk of Court, to be paid to CVS in the amount of $500,688.00 and to Walgreens in the amount of $460,347.00, for a total restitution award of $961,035.00. The victims' recovery is limited to the amount of its loss and the defendant's liability for restitution ceases if and when the victim receives full restitution. The court gives notice that this case may involve other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered and that the court may order such payment in the future.

Signed: November 18, 2015



Max O. Cogburn Jr
United States District Judge

5